**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

March 12, 2021

LETTER TO COUNSEL

      RE:    *Ansah v. Saul, Commissioner, Social Security Administration*
                Civil No. 1:19-cv-02503-JMC

Dear Counsel:

      On August 29, 2019, Plaintiff Bright Ansah petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits and Supplemental Security Income Benefits. (ECF No. 1). I have considered the parties' cross-motions for Summary Judgment. (ECF Nos. 11 & 13). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions and remand the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

      Plaintiff filed his claim for a period of disability and disability insurance benefits on August 23, 2015, and his claim for supplemental security income on January 20, 2016, both alleging an onset date of October 17, 2014. (Tr. 17). Plaintiff amended his alleged onset date to September 30, 2015. *Id.* His claim was denied initially on November 23, 2015 and again on reconsideration on July 8, 2016. *Id.* A hearing was held on May 31, 2018, before Administrative Law Judge Andrew M. Emerson ("ALJ"). (Tr. 45–89). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 17–35). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

      In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof

through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In the instant case, the ALJ found that during the relevant time frame, Plaintiff suffered from the severe impairments of "hepatitis B; fatty liver; asthma; degenerative disc disease; osteoarthritis of the feet; pes planus[;] and major depressive disorder." (Tr. 19). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except standing and/or walking five hours in an eight-hour workday. He can frequently operate foot controls with the bilateral feet. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. The claimant can frequently rotate, flex, and extend the neck. He needs to avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, excessive vibration, pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated areas, hazardous moving machinery, and unprotected heights. The claimant is limited to simple, routine, and repetitive tasks in a low-stress work environment, defined as no strict production quotas. He can occasionally interact with the public, coworkers, and supervisors.

(Tr. 24).

The ALJ determined that Plaintiff is unable to perform any past relevant work. (Tr. 32). However, after considering the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 33–34). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 34).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

Plaintiff makes two main arguments on appeal (with the former comprised of various subparts)—that the ALJ "erroneously assessed the Plaintiff's RFC," and "erroneously evaluated the Plaintiff's subjective complaints." (ECF No. 11-1 at 3; 12). I agree in that that the ALJ's opinion is not supported by substantial evidence. Therefore, I will deny both motions and remand

the case for further analysis. In remanding for additional explanation, I express no opinion as to whether the ALJ's ultimate conclusion that Plaintiff is not entitled to benefits is correct.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. (ECF No. 11-1 at 2). Specifically, Plaintiff contends that the ALJ failed to perform function-by-function assessment by (1) failing to explain "the evidence upon which he relied to determine that a limitation to 'simple, routine, and repetitive tasks with no strict production quota' adequately addressed the Plaintiff's deficiencies in concentration, persistence or pace," and the ALJ failed define "strict production quotas"; (2) failing to explain "how he determined that an individual with moderate limitations in concentration, persistence, or pace would be capable of maintaining, concentration, attention, and pace for 85 percent of the workday"; (3) improperly evaluating the results of Plaintiff's cardiac testing; and (4) failing to properly evaluate Plaintiff's subjective complaints of fatigue. *Id.* at 6–16.

The Commissioner counters that the ALJ's RFC determination is supported by substantial evidence. (ECF No. 13-1 at 5). The Commissioner contends that the ALJ adequately "addressed any difficulties [Plaintiff] had in concentrating, persisting, or maintaining pace, . . . and Plaintiff has not shown that he was more limited than the ALJ found him to be. *Id.* Further, the Commissioner asserts that the ALJ's physical RFC determination is supported by substantial evidence because the ALJ "considered several factors and provided good reasons in support of the weight assigned to" the results of Plaintiff's cardiac testing, and the ALJ "specifically considered Plaintiff's testimony, allegations, and subjective statements due to fatigue." *Id.* at 14–20.

I.   **Function-by-Function Assessment**

Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The regulations further provide that the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Monroe v. Colvin*, 826 F.2d 176, 189 (4th Cir. 2016) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *7 (1996)). Specifically, an ALJ's "RFC assessment is sufficient if it includes a narrative discussion of the claimant's symptoms and medical source opinions." *Bowers v. Commissioner*, Civ. No. SAG-11-1445, 2013 WL 150023, at *2 (D. Md. Jan. 11, 2013) (quoting *Taylor v. Astrue*, Civ. No. BPG-11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012)); *see also White v. Commissioner*, Civ. No. SAG-16-2428, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017) (internal citation and quotations omitted). In the narrative discussion, the ALJ must "build an accurate and logical bridge from the evidence to [his or her] conclusion." *Bowers*, 2013 WL 150023, at *2 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

The Fourth Circuit has rejected a per se rule requiring remand in the absence of an explicit function-by-function assessment, instead holding that "remand may be appropriate 'where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" *Mascio*, 780 F.3d at 636 (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per

curiam). The *Mascio* Court, "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because of conflicting evidence unaddressed in the ALJ's RFC determination, ultimately concluded that remand was necessary. *Id.* at 637.

Of additional import in this case, the Fourth Circuit in *Mascio* further held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011). An individual's "ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* As this Court has clarified in the time since *Mascio*, an ALJ's step three finding "that a claimant suffers from moderate difficulties in concentration, persistence, or pace" compels the ALJ to "either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *McLaughlin v. Colvin*, 200 F. Supp. 3d 591, 600 (D. Md. 2016) (quoting *Talmo v. Comm'r, Soc. Sec.*, Civ. No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

In the instant case, the ALJ posed a hypothetical to the VE with the following relevant limitation: "the individual could only perform simple, routine and repetitive tasks in a low-stress environment, with low stress defined as no strict production quotas." (Tr. 83). That same limitation was later reflected in the ALJ's RFC determination. (Tr. 24) ("The claimant is limited to simple, routine, and repetitive tasks in a low-stress work environment, defined as no strict production quotas). However, it does not follow that such limitations would account for Plaintiff's moderate limitation in "concentrating, persisting, or maintaining pace." (Tr. 23). *See Nakia Tanisha W. v. Saul*, Civ. No. TMD-19-1134, 2020 WL 2198092, at *5 (D. Md. May 5, 2020) ("[E]ven if the ALJ meant to account for Plaintiff's moderate limitation in concentration, persistence, or pace by limiting her to work with 'no strict production quotas,' 'there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace . . . .'" (quoting *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) (per curiam)). Therefore, contrary to *Mascio*'s directive, the ALJ failed to include an applicable RFC limitation to address Plaintiff's concentration, persistence, or pace, or explain why no limitation was necessary.

Further, the ALJ's RFC determination purports to define a "low-stress work environment" as "no strict production quotas." (Tr. 24). Plaintiff's argument that the ALJ "failed to provide any explanation of what he meant by the term "strict production quotas" implicates *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) and its progeny. (ECF No. 11-1 at 7). In *Thomas*, the Fourth Circuit held that the ALJ's failure to define the terms "production rate or demand pace" inhibited the Court's ability to engage in "meaningful appellate review." *Id.* at 312; *see also Perry v. Berryhill*, 765 F. App'x 869, 872 (4th Cir. 2019) (remanding for ALJ's failure to define "non-production oriented work setting"). Without the ALJ's further explanation, the Fourth Circuit could not determine if the RFC determination "properly account[ed] for Thomas's moderate limitations in concentration, persistence, and pace." *Thomas*, 916 F.3d at 312 n.5. Accordingly, the Fourth Circuit remanded the case for the ALJ to clarify the meaning of "production rate or demand pace."

Applying *Thomas*, this Court has repeatedly concluded that the failure to define or explain the term "strict production quotas," and others like it, in RFC determinations frustrates meaningful appellate review. *See Geneva W. v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-18-1812, 2019 WL 3254533, at *3 (D. Md. Jul. 19, 2019) (noting that the term "strict production quotas" "is directly analogous to the term deemed problematic" in *Thomas*, 916 F.3d at 312, and that the Court cannot "determine whether the ALJ's findings were supported by substantial evidence without an explanation of the terms 'production pace or strict production quotas'"); *see also Nakia Tanisha W.*, 2020 WL 2198092, at *5 ("[L]imiting Plaintiff to 'no strict production quotas,' the ALJ 'did not give [the Court] enough information to understand what those terms mean.'") (quoting *Thomas*, 916 F.3d at 312).

Here, the ALJ's failure to: 1) include an adequate RFC limitation pertaining to Plaintiff's concentration, persistence, and pace (in light of the ALJ's determination that Plaintiff experiences a moderate limitation in same); and 2) define "strict production quota" in her hypothetical to the VE and in her written decision, warrant remand under *Mascio* and *Thomas*. *See Nakia Tanisha W.*, 2020 WL 2198092, at *5 (concluding that remand was necessary "to allow the ALJ to clarify the RFC assessment and hypothetical to the VE, in order to establish that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion") (quotation omitted). Without explanation from the ALJ, such terms are "not common enough for [the Court] to know what they mean without elaboration." *Thomas*, 916 F.3d at 312. "On remand, the ALJ will need to establish for how long, and under what conditions, [Plaintiff] is able "to focus [his] attention on work activities and stay on task at a sustained rate." *Id.* at 312 n.5 (quoting 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00E(3)).

The ALJ also failed to explain how Plaintiff could be productive or stay on task for more than 85% of an eight-hour workday, notwithstanding Plaintiff's "moderate limitation" in "concentrating, persisting, or maintaining pace." (Tr. 23). *See McLaughlin*, 200 F. Supp. 3d at 602 (finding remand appropriate where ALJ failed to explain how claimant with a moderate limitation in concentration, persistence, or pace, could remain productive for 85% of a workday given VE's testimony that an individual 'off task' more than 15% of could not perform any work). The VE in this case testified that "there [would] be no work" if the hypothetical individual "was off task 15 percent of the day." (Tr. 85). This Court is therefore not satisfied that the ALJ's narrative discussion "buil[t] an accurate and logical bridge" necessary to support the decision. *Bowers*, 2013 WL 150023, at *2 (quoting *Clifford*, 227 F.3d at 872). Therefore, remand is warranted.

## II.   Treating Physician Opinion

In reaching his determination, the ALJ was required to consider the medical opinions of Plaintiff's treating physician. *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in [a claimant's] case record.").[1] The Fourth Circuit recently reiterated the "two rules an ALJ must follow when evaluating a medical opinion from a treating physician" under § 404.1527(c)(2):

---

[1] 20 C.F.R. § 404.1520c supersedes 20 C.F.R. § 404.1527 as the regulation governing the evaluation of medical opinion evidence. *See Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 384 n.8 (4th Cir. 2021). However, Section 404.1527 still applies to Social Security claims filed before March 27, 2017; accordingly, it governs here. *See id.*

> First, it establishes the "treating physician rule," under which the medical opinion of a treating physician is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Second, if a medical opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the following factors to determine the weight the opinion should be afforded: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of the treatment relationship"; (3) "[s]upportability," i.e., the extent to which the treating physician "presents relevant evidence to support [the] medical opinion"; (4) "[c]onsistency," i.e., the extent to which the opinion is consistent with the evidence in the record; (5) the extent to which the treating physician is a specialist opining as to "issues related to his or her area of specialty"; and (6) any other factors raised by the parties "which tend to support or contradict the medical opinion."

*Dowling v. Comm'r, Soc. Sec. Admin.*, 986 F.3d 377, 384–85 (4th Cir. 2021) (citations omitted, alterations in original). Under 20 C.F.R. § 404.1527(c)(2), an ALJ must "consider *all* of the enumerated factors in deciding what weight to give a medical opinion." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 107 n.16 (4th Cir. 2020) (emphasis in original).

Here, the ALJ noted the following with regard to Dr. Bhandary—Plaintiff's treating cardiologist:

> [O]n October 12, 2016, Balnath Bhandary, M.D. opined that the claimant is limited to an extremely reduced range of sedentary work that precludes any full-time employment due to excessive absences and time off task (Ex. 22F). This opinion receives modest weight because it is inconsistent with the above-discussed medical evidence of record, including the claimant's treatment records, which repeatedly show mild and normal findings on objective examinations, medical imaging, laboratory testing, and other diagnostic techniques. In fact, on the day of this opinion, Dr. Bhandary's examination of the claimant showed grossly normal findings throughout the body, including normal heart and lungs, normal abdomen, normal extremities, normal strength, and intact sensation (Ex. 23F/21). Also, Dr. Bhandary's opinion is not consistent with the claimant's ability to exercise to 11.2 and 11.7 METs and walk for an hour, his mild degenerative disc disease, his mild osteoarthritis, and minimal/mild hepatitis B and minimal asthma (Exhibits 4F1, 17F/4, 20F/39/13, 13F/64, and 14F/2).

(Tr. 31). While there is no indication that Dr. Bhandary's opinion was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(c)(2), "a reasonable mind could conclude that the opinion conflicts with other evidence in the record." *Dowling*, 986 F.3d at 385. Still, the ALJ's failure to consider each of the § 404.1527(c)(2) factors constitutes error. "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating physician, it must nonetheless be apparent from the ALJ's decision that [s]he meaningfully considered each of the factors before deciding how

6

much weight to give the opinion." *Id.* The ALJ's explanation only meaningfully discusses only one of the aforementioned factors—consistency. Specifically, the ALJ noted that the "opinion receives modest weight because it is inconsistent with the . . . medical evidence of record." (Tr. 31). However, the ALJ "never so much as acknowledged the existence of the Section 404.1527(c) factors," and the decision was "completely silent" as to the remaining five factors. *Id.* Accordingly, remand on this point is warranted under *Dowling*.

### III. Credibility Analysis Concerning Plaintiff's Subjective Complaints

An ALJ must evaluate a claimant's subjective complaints under the two-step framework set out in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029. *Arakas*, 983 F.3d at 95. "First, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (quoting 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). Second, "the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Id.* (citing 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4). "[W]hile there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). It follows, then, that a claimant is "entitled to rely exclusively on subjective evidence to prove the second part of the test." *Hines v. Barnhart*, 453 F.3d 559, 564–65 (4th Cir. 2006).

Plaintiff argues that the ALJ "applied an improper standard in evaluating the Plaintiff's subjective complaints," namely, fatigue. (ECF No. 11-1 at 13). Specifically, Plaintiff suggests that the ALJ required "objective evidence to substantiate the intensity, persistence and limiting effects of his subjective complaints." *Id.* at 14.

The Court finds that the ALJ erred when he discounted Plaintiff's subjective complaints of fatigue. For the first prong of the test, the ALJ found "that the claimants medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 25). However, the ALJ's analysis went astray as it pertains to the second prong, where the ALJ discounted Plaintiff's statements concerning the "intensity, persistence, and limiting effects" of fatigue because such statements were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* The ALJ "improperly increased [Plaintiff's] burden of proof" by effectively requiring [his] subjective descriptions of [his] symptoms to be supported by objective medical evidence." *Arakas*, 983 F.3d at 96.

The ALJ's analysis principally relies on "objective examinations, medical imaging, and other diagnostic techniques" to show that Plaintiff had "only mild abnormalities with many normal findings." (Tr. 25). For example, the ALJ cites laboratory results indicating low or slightly above normal Hepatitis B viral levels, a liver biopsy showing "'minimal' inflammation," and a myocardial perfusion study showing "excellent exercise tolerance." *Id.* at 25–26. The ALJ further asserted that "[t]he claimant's exercise tolerance [as shown by two stress echocardiograms] suggests that he could at least perform the exertional demands of light work." *Id.* at 26. Indeed, in conclusion, the ALJ states that "the objective medical evidence discussed throughout this opinion does not support [Plaintiff's primary allegation]. Rather, the objective medical evidence

7

usually shows mild findings with good control of [Plaintiff's] impairments and without significant exacerbations." *Id.*

Because of the ALJ's weighty reliance on these objective medical findings, the ALJ's references to Plaintiff's daily activities does not save his decision. (Tr. 26). A plain reading of the decision indicates that, despite the ALJ's consideration of other evidence, "the lack of objective medical evidence was [the] chief, if not definitive, reason for discounting" Plaintiff's subjective complaints. *Arakas*, 983 F.3d at 97. Therefore, even though the ALJ considered other, permissible evidence such as daily activities, "the ALJ 'effectively required' objective evidence [to support Plaintiff's subjective description of his symptoms] by placing undue emphasis on [claimant's] normal clinical and laboratory results"). *Id.* Therefore, remand is warranted.

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment (ECF No. 11), is DENIED and Defendant's Motion for Summary Judgment (ECF No. 13) is DENIED. The Commissioner's judgment is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge

8